IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ROLLIX INTERNATIONAL, INC. * | CIVIL NO. 96-2245(DRD) |
| Plaintiff, * | |
| v. * | |
| PROPERTY PROTECTION * | |
| SYSTEMS, INC., RALPH * | |
| HERNANDEZ AND LUIGI * | |
| CARBONE, * | |
| Defendants. * | |

## ORDER

The Final Report and Recommendations of the Monitor filed on this same date is to be notified by the Clerk of Court to Plaintiff and to the Defendants. All parties are ORDERED to notify the court within twenty (20) days of this order why the recommendations of the Monitor should not be adopted by the court as to final disposition of the administrative side of the case and as to the disposition of the monies that remain deposited in the court.

The motion submitting the Monitor's Invoice for the months of April, June, July and September 1999, is approved. The Clerk shall proceed forthwith with the disbursement.

IT IS SO ORDERED.

At San Juan, P.R., this 8 day of September 1999.



(fr) DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE



3 w/attchs.

AO 72A
(Rev 8/82)



IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROLLIX INTERNATIONAL, INC.

  Plaintiff

V

PROPERTY PROTECTION SYSTEMS
INC., RALPH HERNANDEZ AND
LUIGI CARBONE

  Defendants

CIVIL NO. 96-2245 (DRD)

RECEIVED & FILED
SEP / 8 1999
OFFICE-CLERK U.S.
DIST. CT.
SAN JUAN, PR

**FINAL REPORT AND RECOMMENDATIONS**
**OF THE MONITOR**

TO THE HONORABLE COURT:

  COMES NOW the Court appointed Monitor in this matter and respectfully sets forth and proposes to this Honorable Court as follows:

  1. On November 25, 1995 Rollix International, Inc. ("Rollix") entered into an Exclusive Rollix Retail Dealership Agreement ("the Dealership Agreement") with Property Protection Systems, Inc, ("PPS") whereby PPS was granted the exclusive right to purchase hurricane shutters, and related products supplied by Rollix and to resell and install them within the territory of Puerto Rico and the U. S. Virgin Islands.

  2. On the basis of such Dealership Agreement PPS entered into a series of individual independent contracts between PPS and local customers within the territory of Puerto Rico for the sale and installation of hurricane shutters supplied by Rollix on or upon the customers' properties.

2.

3. In the fall of 1996, Rollix filed an action before this Court against PPS and its principals, Ralph Hernández and Luigi Carbone.

4. Shortly afterwards, on October 31, 1996 Rollix, PPS and Ralph Hernández executed a Settlement Agreement whereby all claims made by Rollix against PPS, Ralph Hernández and Luigi Carbone in Civil Case No. 96-2245 (DRD) before this Court were settled. The Settlement Agreement further provided for the entry of an Order by Consent and Partial Unappealable Judgment as well as for a Court mandated procedure designed to enable Rollix to enter into new contracts with the customers in order to promptly manufacture and install the hurricane shutters identified in the original PPS outstanding contracts.

The Settlement Agreement further provided for the naming of a Special Master or Monitor who would be in charge of monitoring compliance with the Stipulation submitted to this Court, with the Order by Consent and Partial Judgment and with the Settlement Agreement. Pursuant to an Order dated November 1, 1996 the undersigned was appointed Monitor for the above stated purposes.

Among the documents submitted by PPS to Rollix was a listing of clients, divided into six (6) groups depending on whether the contract had been complied with by PPS and no moneys were due PPS, others where PPS had not completed work and moneys were owed or not owed by PPS, others where installation of the shutters was incomplete, others were no work had been done and others where work done or

---

1. The action against Mr. Luigi Carbone was settled or voluntarily dismissed on or about that time

3.

5. This Monitor submitted Interim reports for the months of November 1996, January, February and March 1997, April and May 1997, June 1996, December 1997 and January 1998.

In addition and in lieu of written reports the Monitor was present and reported orally at numerous meetings with the presiding Judge, Honorable Daniel R. Domínguez, and the parties commencing on December 1997 and continuing on several occasions until the hearing held by the Court in July of 1998, which resulted in the Opinion and Order issued on November 30, 1998.

6. Meetings and correspondence and telephone calls were also held by the Monitor with the U. S. Postal Inspector, Mr. Juan Berrios, with officers and attorney Rolando Quevedo for First Bank, with numerous PPS and Rollix customers and/or their counsel, with representatives of the Department of Consumer Affairs, with Mr. Alfredo Torres, Mr. Michael Adkins, Mr. Robert Chapman and Mr. Gary Martin on behalf of Rollix and counsel for Rollix, as well as with Mr. Ralph Hernández and his counsel Mr. Carlos Noriega. Meetings were also held with various counsels for PPS entrusted with defending the company in actions initiated by some of its former customers who were seeking redress. All of the matters discussed in these meetings or phone callss or in the correspondence received by the Monitor were deferred to in the interim reports, both verbal or written.

7. During the period from January 1997 until mid 1998 the Monitor repeatedly reported what he considered to be a lackadaisical approach by Rollix towards completing the work still pending in the Group IV contracts where the outstanding funds would have been collected, upon completion of the pending matter.

4.

Rollix alleged in the second quarter of 1998 that the cost effectiveness of collecting such funds was poor and that for that reason their efforts to that effect had been less than enthusiastic. The Monitor believes that such argument was not valid in late 1996 and 1997 but concedes that the lack of such effort during such periods of time may have resulted in this situation which they belatedly raised in mid 1998.

8. The bulk of the Monitor's time had to be dedicated to receiving complaints of dozens of PPS clients who had paid deposits and had not received the shutters, or these shutters were only partially or incorrectly installed, or to whom services or parts were still pending from their orders. Some of these persons had obtained financing through personal or consumer loans at financial institutions and now were faced with the need of repaying their obligations without having received the goods for which they contracted and paid.

9. The report of the Postal Inspector to over 200 customers and complainants in his office to the effect that this Court had named a Monitor substantially increased the inquiries to the Monitor by dissatisfied PPS clients.

10. Rollix's inability to establish an orderly operation here to oversee compliance with the terms of the Settlement Agreement and Stipulations was a pivotal element in their failure to obtain a higher percentage of collection of funds, particularly from Group IV clients. The Court is well aware of the continuous change in Rollix personnel in charge in Puerto Rico and in the mainland U.S.A., a factor which precluded an orderly and effective operation in compliance with the terms of the Stipulation and Settlement Agreement.

5.

11. The Monitor further believes that Rollix did not seek the active collaboration of Mr. Ralph Hernández in seeking Group IV collections and acknowledges that Mr. Ralph Hernández was also less than cooperative in this aspect as well as in other efforts to comply with the Settlement Agreement and the Stipulations.

12. Altogether SIXTY FOUR THOUSAND ONE HUNDRED SIXTEEN DOLLARS AND FIFTY CENTS ($64,116.50) were received and deposited by the Monitor during the period from December 27, 1996 and October 21, 1997, of which sum THIRTY FOUR THOUSAND SEVEN HUNDRED FIFTY DOLLARS ($34,750.00) were paid by PPS in February 1997.

13. Of the total funds deposited in the Escrow Account payments to cover the Monitor's fees have been made covering the period from November of 1996 until February 28, 1999, a total of 28 months. The amounts so paid for fees as fixed by the Court, plus expenses, total THIRTY FOUR THOUSAND SIX HUNDRED FIXTY DOLLARS ($34,650.00).

This means that the balance now on deposit in the Escrow Account should be TWENTY NINE THOUSAND FOUR HUNDRED SIXTY SIX DOLLARS AND FIFTY CENTS ($29,466.50).

14. Given the fact that the final settlement talks between Rollix and Mr. Hernández held during 1998 yielded no practical result and that this Court's Opinion and Order and its Judgment of November 30, 1998 has not resulted in further action

---

2. The account is administered by the Clerk of the Court, not by the Monitor

6.

by the parties the Monitor believes no further money stands to be collected for the Escrow Account.

 15. In light of the above the Monitor recommends the following

  a)   That notice be given to the general public that the instant proceedings have concluded.

  b)   That, under prior arrangements to be reached by this Court's personnel, or by the Monitor, if so ordered by the Court, with the Department of Consumer Affairs of the Commonwealth of Puerto Rico, the escrowed funds be transferred by order of this Court to said state agency for use in distributing same to all such PPS clients who have prior to this date filed or who now file, a complaint for reimbursement.

  c)   That the notice mentioned in (a) above inform the general public that the escrowed funds have been delivered to DACO as set forth in (b) above.

Respectfully submitted in San Juan, Puerto Rico, this 9th day of April, 1999.

GUILLERMO A. NIGAGLIONI
USDC No. 111102
Rainbow Building
1750 Fernández Juncos Ave.
Santurce, Puerto Rico 00909-2937
Telephone: 268-7240 - FAX 268-2929